## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALVIONA LYNISE BROWN** | **CIVIL ACTION** |
| **VERSUS** | **No. 25-1902** |
| **EPIC FEDERAL CREDIT UNION, ET AL.** | **SECTION I** |

### ORDER AND REASONS

Before the Court are two motions to dismiss *pro se* plaintiff Calviona Lynise Brown's ("plaintiff") claims in her first amended complaint[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). First, defendant Trans Union LLC's ("Trans Union") motion[2] to dismiss, joined by defendants Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax"),[3] (collectively, the "Consumer Reporting Agency Defendants" or "CRAs") seeks to dismiss plaintiff's claims alleged against the CRAs. Second, defendants Brittany Johnson ("Johnson"), EPIC Federal Credit Union ("EPIC"),[4] and Vega, Jones & Dubois, APLC ("VJD") (collectively with the CRAs, "defendants") filed a joint motion[5] to dismiss plaintiff's claims alleged against them.

---

[1] R. Doc. No. 32.

[2] R. Doc. No. 36.

[3] *See* R. Doc. Nos. 38, 41, 47, 48.

[4] Formerly known as Greater New Orleans Federal Credit Union. *See* R. Doc. No. 32 ¶ 19.

[5] R. Doc. No. 42.

Plaintiff filed responses in opposition to both motions.[6] Equifax and Trans Union, joined by Experian, filed a joint reply[7] with respect to the CRAs' motion to dismiss. Johnson, EPIC, and VJD did not file a reply.

For the foregoing reasons, the motions to dismiss are granted in part and denied in part. The motion to dismiss plaintiff's claims, pursuant to the Fair Credit Reporting Act ("FCRA"), against the CRAs is granted with respect to defendants Trans Union and Equifax, and denied with respect to Experian. The motion to dismiss plaintiff's Federal Debt Collection Practices Act ("FDCPA") claim against VJD and her FCRA claim against EPIC is also denied. However, the Court grants in part the same motion to dismiss with respect to plaintiff's abuse of process claims against Johnson, EPIC, and VJD.

## I.   BACKGROUND

On January 2, 2026, plaintiff filed her first amended complaint (the "complaint") alleging causes of action pursuant to the FDCPA, the FCRA, and abuse of process under Louisiana law.[8] According to plaintiff, this case concerns "misconduct involving a federal credit union, its employee, its outside counsel, and consumer reporting agencies [that] misrepresent[ed] the nature of an alleged consumer debt, conceal[ed] a vehicle repossession and disposition, unlawfully

---

[6] R. Doc. Nos. 37, 45. While R. Doc. No. 45 was entered into the record as a sur-reply, plaintiff captioned it as an opposition to Johnson, Epic, and VJD's joint motion to dismiss. *See id.*

[7] R. Doc. No. 44.

[8] R. Doc. No. 32.

pursue[d] debt collection and garnishment activity, and retaliate[d] against [her] through false credit reporting and litigation-related misconduct."[9]

Plaintiff alleges that her vehicle was repossessed in October 2020 in connection with "an alleged consumer debt" "purportedly arising from a retail installment transaction" with EPIC.[10] She asserts that "material facts concerning the repossession, including but not limited to the date of repossession, the subsequent sale or disposition of the vehicle, and the application of any sale proceeds to the alleged debt" were "concealed" from her.[11] As a result, plaintiff claims that the concealment of these facts prevented her "from timely discovering the disposition of the collateral and accurately assessing the balance" of the consumer debt.[12]

According to plaintiff, VJD, "acting as outside counsel and collection counsel for" EPIC, "pursue[d] collection activity against her . . . without disclosing the repossession, the sale or disposition of the vehicle, or providing . . . a complete and accurate accounting of the alleged debt."[13] Plaintiff claims that VJD proceeded with "seeking entry of default judgment based on alleged balances that were not updated to reflect the repossession, and without disclosing the repossession, providing a post-repossession ledger, or producing the purported 'promissory note.'"[14] Plaintiff alleges that defendant Johnson participated in the collection efforts by submitting sworn

---

[9] *Id.* ¶ 1

[10] *Id.* ¶ 27.

[11] *Id.* ¶ 29.

[12] *Id.* ¶ 30

[13] *Id.* ¶¶ 31–32.

[14] *Id.* ¶ 34.

affidavits that included the aforementioned "material" omissions.[15] Plaintiff refers to the default action, in which VJD represented EPIC, as "DOCKET NO. 19-08974, DIVISION 'B'" ("Docket No. 19-08974").

Around September 2023, enforcement of the default entry in Docket No. 19-08974 was initiated against plaintiff, "including through wage garnishment and related collection mechanisms."[16] Plaintiff states that her ability to contest the default judgment and wage garnishment was impacted by the "concealment" of "the repossession and the disposition of" her vehicle, as well as the absence of a "post-repossession accounting reflecting any adjustment of the alleged balance" of her debt.[17]

Plaintiff also claims that EPIC "furnished information regarding the alleged debt to" the CRAs, and in doing so "omitted material facts concerning the repossession and sale of [her] vehicle and misrepresented the nature, status, and amount of the alleged obligation."[18] Plaintiff states that she submitted "multiple disputes challenging the accuracy and completeness of the reported information" with the CRAs and the Consumer Financial Protection Bureau ("CFPB"), but the complaints were closed "without correcting the tradelines or performing a reasonable reinvestigation of the disputed items."[19] According to plaintiff, the CRAs closed disputes that she lodged with them in 2021 and 2024, regarding the accuracy of her

---

[15] *Id.* ¶¶ 33–34.
[16] *Id.* ¶ 48.
[17] *Id.* ¶¶ 49–50.
[18] *Id.* ¶¶ 39–40.
[19] *Id.* ¶¶ 40–41.

credit profile, based on information that EPIC provided, and without providing her with descriptions of the procedures they used to verify the accuracy of the reported information.[20] Plaintiff posits that this resulted in the CRAs continuing to report "inaccurate and misleading information," including an artificially inflated and improperly reported account balance and payment history," and "caus[ed] damage to [her] credit reputation, increased borrowing costs, denial of financial opportunities, and other . . . harm."[21]

Additionally, plaintiff alleges that VJD continued making misrepresentations and "material" omissions during the CFPB's review of her complaint, as recently as November 2025.[22] Plaintiff asserts that VJD's submissions to the CFPB in November 2025 "constituted new acts and representations in furtherance of [an] ongoing course of conduct to misrepresent the alleged debt and conceal material facts."[23] She also states that she was not, and could not have been, aware of VJD's full involvement in the collection proceedings against her prior to November 2025.[24]

## II.    STANDARD OF LAW

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

---

[20] *Id.* ¶¶ 62–64, 66–69, 73–77, 80–81, 83.
[21] *Id.* ¶¶ 37, 40, 42.
[22] *Id.* ¶¶ 43–44.
[23] *Id.* ¶ 46.
[24] *Id.* ¶ 47.

The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim," and the Court does "not accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (first citing *Twombly*, 550 U.S. at 555; and then quoting *Iqbal*, 556 U.S. at 678). Although, "[i]t is well-established that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers," *Bustos v. Martini Club,* 599 F.3d 458, 461–62 (5th Cir. 2010) (alteration in original), "[t]his requirement holds true even for pro se litigants." *Roque v. Jazz Casino Co. LLC*, 388 F. App'x 402, 405 (5th Cir. 2010).

Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). The Court may consider all "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). "It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025) (quotations omitted).

"Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)) (alteration in original). The complaint must plead facts that "raise a right to relief above the speculative level." *Spiller v. Harris Cnty.*, 113 F.4th 573 (5th Cir. 2024) (quoting *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017)

### III.   ANALYSIS

### A.   Count I – Fair Debt Collection Practices Act Claim

Plaintiff alleges count I against VJD only, claiming that VJD violated the FDCPA, 15 U.S.C. §§ 1692e and 1692f, by utilizing "false, deceptive, or misleading representations and unfair or unconscionable means" when attempting to collect on her alleged debt.[25] To state a claim pursuant to the FDCPA, a plaintiff must plead

---

[25] R. Doc. No. 32 ¶ 58.

facts indicating that a defendant, acting as a "debt collector," violated one of the prohibited practices enumerated in the act. *See Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234, 1238 (5th Cir. 1997).

A debt collector includes "any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). Here, plaintiff alleges facts establishing—and VJD does not dispute—that VJD was acting as a debt collector on behalf of EPIC.[26]

Additionally, Sections 1692e and 1692f of the FDCPA prohibit debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," § 1692e, or using "unfair or unconscionable means to collect or attempt to collect any debt," § 1692f. Plaintiff alleges that in violation of §§ 1692e and 1692f, VJD made misrepresentations and "material" omissions in connection with its collection of her alleged debt, and continued with its collection efforts despite being aware of the "disputed, incomplete, or misleading" nature of the information it was relying on and disseminating to third parties.[27]

In response to plaintiff's FDCPA claim, VJD's sole argument is that the one-year statute of limitations has run, pursuant to 15 U.S.C. § 1692k(d), because her allegations concern the 2020 repossession of her vehicle and associated default

---

[26] *Id.* ¶¶ 31–37, 56.
[27] *Id.* ¶¶ 43–47, 55–60.

judgment.[28] However, plaintiff also asserts that around November 2025, well within the one-year FDCPA statute of limitations, VJD misrepresented information concerning the "nature, status, and amount" of her alleged debt in response to a complaint she filed with the CFPB, despite being aware that the information it provided was false.[29] Plaintiff also alleges that the collection activity directed against her, including wage garnishment, has continued.[30] She also states that VJD's misrepresentations have allowed it "to obtain collection leverage and enforcement advantages to which [it was] not entitled, and not for the legitimate purpose of resolving a fully disclosed and accurately stated debt."[31] VJD does not respond to nor offer any counterarguments addressing the violations that plaintiff alleges occurred within the statute of limitations.

"Drawing all reasonable inferences in favor of [p]laintiff," her complaint alleges facts supporting an inference that VJD used misleading representations or unfair practices in connection with its debt collection activity against plaintiff. *Roberts v. Am. Bank & Tr. Co.*, 835 F. Supp. 2d 183, 199 (E.D. La. 2011) (Fallon, J.). Plaintiff's claims could plausibly give rise to an entitlement to relief pursuant to §§ 1692e and 1692f, and "discovery is warranted with respect to these allegations." *Id*. Accordingly, VJD's motion to dismiss count I of plaintiff's complaint is denied.

---

[28] R. Doc. No. 42-1, at 3.
[29] R. Doc. No. 32 ¶¶ 3, 40–41,43–47.
[30] *Id.* ¶¶ 48, 57; R. Doc. No. 45, at 2.
[31] R. Doc. No. 32 ¶ 88.

9

### B.   Count II – Federal Credit Reporting Act Claims

Count II of plaintiff's complaint alleges claims pursuant to the FCRA against EPIC, specifically violations of 15 U.S.C. § 1681s-2(b), and against the CRAs, alleging violations of 15 U.S.C. §§ 1681i(a) and 1681e(b).[32] The Court will address plaintiff's claims against EPIC and the CRAs separately in turn.

#### 1.   *EPIC – 15 U.S.C. § 1681s-2(b) Claim*

Section 1681s-2(b) provides a private right of action for consumers against furnishers of credit information ("furnisher"). *See Thomasson v. Bank One, Louisiana, N.A.*, 137 F. Supp. 2d 721, 723 (E.D. La. 2001) (Fallon, J.). While the FCRA does not define "furnishers of credit information," "[c]ourts in the Fifth Circuit 'have defined the term broadly to mean an entity [that] transmits information concerning a particular debt owed by a particular consumer to a credit reporting agency.'" *Beard v. Experian Info. Sols., Inc.*, No. 23-1306, 2023 WL 8827762, at *4 (E.D. La. Dec. 21, 2023) (Milazzo, J.) (citations omitted). EPIC has not disputed plaintiff's contention that it is a furnisher for purposes of the FCRA.

To state a claim against a furnisher, a plaintiff must show that: "(1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation." *Id.* Plaintiff alleges that she disputed credit information that EPIC provided to the CRAs on numerous occasions and that

---

[32] *Id.* ¶¶ 64, 71, 78, 84.

nevertheless, EPIC continued to furnish allegedly "inaccurate and materially incomplete information" and "failed to conduct a reasonable investigation."[33]

In response, EPIC raises a statute of limitations argument in support of dismissing plaintiff's claim.[34] Section 1681p of the FCRA instructs a statute of limitations of no later than the earlier of "[two] years after the date of discovery by the plaintiff of the violation" or "[five] years after the date on which the violation . . . occurs." EPIC argues that because plaintiff first disputed the accuracy of the data that it furnished the CRAs in December 2021, plaintiff "had obviously discovered the violation at that time," but did not "file her original complaint until" more than three years after she discovered the violation.[35] Plaintiff counters that she also disputed, on multiple occasions, the accuracy of credit information that EPIC furnished to the CRAs less than two years prior to the filing of this lawsuit—including disputes she filed around June 2024 with Experian, August 2024 with Trans Union, July 2025 with Equifax and the CFPB, and September 2025 with Equifax and the CFPB.[36] As such, the question remains whether the alleged inaccuracies that plaintiff disputed in 2024 and 2025, and EPIC's resulting investigation or lack thereof, support a right to relief pursuant to the FCRA in the present action.[37]

EPIC's argument is essentially that plaintiff's later allegations do not escape

---

[33] *Id.* ¶¶ 62, 64.

[34] R. Doc. No. 42-1, at 3–4.

[35] *Id.* at 3.

[36] R. Doc. No. 32 ¶¶ 62–64, 68, 75–76, 81–8; R. Doc. No. 45, at 3.

[37] Plaintiff does not argue that she maintains a cause of action for any inaccuracies that she failed to dispute within the statute of limitations. *See id.* at 2.

the statute of limitations bar because they concern the same issues encompassed in her December 2021 disputes. This argument is uncompelling. The Fifth Circuit has held that with respect to the FCRA statute of limitations, "each transmission of the same credit report is a separate and distinct [violation] to which a separate statute of limitations applies" and "each new issuance results in a distinct and separate injury." *Hyde v. Hibernia Nat. Bank in Jefferson Par.*, 861 F.2d 446 (5th Cir. 1988). Other districts have similarly found that each subsequent reporting of inaccurate or misleading credit information, and the resulting failure to conduct a reasonable investigation, constitutes a separate FCRA violation. *See Ponder v. Ocwen Loan Servicing, LLC*, No. 16-04125, 2021 WL 5027495, at *9 (N.D. Ga. Aug. 4, 2021); *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 291 (S.D.N.Y. 2014); *Tilley v. Glob. Payments, Inc.*, 603 F. Supp. 2d 1314, 1323–24 (D. Kan. 2009). As such, each time EPIC furnishes erroneous credit information, it carries the potential for a new § 1681s-2(b) violation if it also fails to correct the alleged inaccuracy or to conduct a reasonable investigation in response to plaintiff's disputes.

Plaintiff alleges that on at least four instances in 2024 and 2025, within the prescriptive period, EPIC failed to conduct an adequate investigation and did not correct information she disputed as incorrect and incomplete.[38] Accordingly, she has sufficiently alleged a cause of action against EPIC pursuant to § 1681s-2(b) with respect to the inaccuracies that she raised in her 2024 and 2025 disputes, regardless of whether she had also previously raised the same issues in December 2021.

---

[38] *See supra* note 36 and associated text.

2.      *Consumer Reporting Agencies – 15 U.S.C. §§ 1681i and 1681e(b) Claims*

Plaintiff asserts two causes of action against all three CRAs concerning the alleged inaccuracies in her reported debt obligation to EPIC. First, she alleges the CRAs violated 15 U.S.C. § 1681i by failing to "conduct reasonable reinvestigations" into the alleged "inaccurate or misleading reporting."[39] Second, she claims that the CRAs "failed to follow reasonable procedures to assure maximum possible accuracy" of her credit report, in contravention of 15 U.S.C. § 1681e(b).[40] Finally, plaintiff also specifically asserts a claim pursuant to 15 U.S.C. § 1681i(a)(7) against Experian and Equifax for failing to provide her with "a description of the procedure used to determine the accuracy and completeness of the information" in her credit report, despite her request for the same.[41]

To state a claim for a failure to conduct a reasonable investigation pursuant to § 1681i, a plaintiff must sufficiently allege that:

> (1) he disputed the completeness or accuracy of an item of information contained in his consumer file at [defendant] and notified [defendant] directly of that dispute; (2) [defendant] did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by Section 1681i(a)(5) within the statutory period; (3) [defendant's] noncompliance was negligent or willful; (4) [plaintiff] suffered injury; and (5) [plaintiff's] injury was caused by [defendant's] failure to reinvestigate and record the current status of the disputed information or delete the item from the file.

*Beard*, 2023 WL 10554729, at *4 (alterations in original) (quoting *Hammer v. Equifax Info. Servs., LLC*, No. 18-1502, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019)).

---

[39] R. Doc. No. 32 ¶ 71; *see also id.* ¶¶ 78, 84.
[40] *Id.* ¶ 84; *see also id.* ¶¶ 71, 78.
[41] *Id.* ¶¶ 76, 83.

Similarly, to state a claim pursuant to § 1681e(b), plaintiff "must adequately allege that: (1) inaccurate information was included in her credit report; (2) the inaccuracy was due to [the CRA's] failure to follow reasonable procedures to assure maximum possible accuracy; (3) [she] suffered injury; and (4) [her] injury was caused by the inclusion of the inaccurate entry." *Huggins v. Trans Union, LLC*, No. 21-02418, 2023 WL 3361202, at *3 (N.D. Tex. May 10, 2023) (citing *Hammer*, 2019 WL 7602463).

A threshold requirement for a plaintiff asserting claims pursuant to either § 1681e(b) or § 1681i is establishing that there was an inaccuracy in the information the defendant CRA reported. *See Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 286 (5th Cir. 2025); *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020). Plaintiff's complaint alleges five discernible inaccuracies in support of her FCRA claims. She claims, with respect to her alleged obligation to EPIC, that the CRAs (1) conveyed in a misleading way the nature of her debt as a "promissory note";[42] (2) omitted or inaccurately reported facts regarding the "status" and "amount of the alleged obligation";[43] and (3) inaccurately reported her payment history on the debt.[44] She also alleges that Experian inaccurately reported that (4) "the [EPIC] account [was] charged off while simultaneously updating balances through May 31, 2024," and (5) "that the creditor was unable to locate [her] from December 31, 2019

---

[42] *Id.* ¶¶ 28, 40, 67.

[43] *Id.* ¶¶ 40, 67.

[44] *Id.* ¶ 67.

through May 31, 2024."[45] Plaintiff claims that she disputed these inaccuracies with the CRAs.[46]

Courts may find information inaccurate pursuant to the FCRA "either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). "Courts use an 'objectively reasonable' interpretation of the credit report to determine if it is accurate under the FCRA . . . [i]n sum, a credit report contains inaccurate information if it is 'factually incorrect, objectively likely to mislead its intended user, or both.'" *Thomas v. Transunion, LLC*, No. 21-2241, 2022 WL 1288733, *3 (E.D. La. Apr. 29, 2022) (Ashe, J.) (quoting *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020)). "[I]f an alleged inaccuracy 'evades objective verification'—like inaccuracies that turn on legal disputes—it is not cognizable under the FCRA." *Reyes*, 140 F.4th at 288 (citing *Mader v. Experian Info Sols., Inc.*, 56 F.4th 264, 267 (2d Cir. 2023)).

The CRAs argue that the first, second, and third inaccuracies that plaintiff alleges are insufficient to support her FCRA claims against them because they are conclusory and lacking sufficient factual detail, are not objectively verifiable, and should not be brought against the CRAs but against the furnisher, EPIC.[47] The Court agrees.

---

[45] *Id.* ¶ 82.
[46] *See generally id.*
[47] *Id.* at 8–10.

First, to the extent plaintiff objects to the description of her obligation to EPIC as a "promissory note" because it is in reality a "retail installment contract," such a categorization is not facially inaccurate. Financing agreements for the purchase of a vehicle may sometimes be referred to as a "retail installment contract" or a "promissory note." *See*, *e.g.*, *Myles v. Gen. Motors Acceptance Corp.*, No. 97-2030, 1998 WL 158483 (E.D. La. Apr. 1, 1998) (Clement, J.) (using "promissory note retail installment contract," "retail installment contract," and "promissory note" in reference to the same financing agreement). Beyond general conclusory statements that it was false,[48] plaintiff has not alleged any facts detailing how referring to her retail installment contract as a promissory note was inaccurate or misleading. Additionally, to the extent plaintiff objects to referring to the agreement as a promissory note because it entails a legal obligation for the underlying debt, she readily admits that the existence of such an obligation on her account was a legal issue "in litigation."[49] As such, her first alleged inaccuracy is insufficient to support an FCRA claim against the CRAs.

Plaintiff also alleges, without providing additional detail with respect to what specific information she disputed as inaccurate, that the CRAs inaccurately reported the status, amount, and payment history of her obligation to EPIC.[50] However,

---

[48] *See* R. Doc. No 32 ¶¶ 2, 28, 44.

[49] *Id.* ¶ 68.

[50] Plaintiff also argues that Trans Union ultimately deleting EPIC tradelines is indicative that an objectively verifiable inaccuracy existed in her report prior to the deletion. *Id.* ¶ 71. However, the fact that Trans Union ultimately decided to delete the tradelines is not determinative that an inaccuracy existed prior to that decision and plaintiff does not provide any facts allowing the Court to infer otherwise.

without specific facts detailing the alleged inaccuracies with respect to the status, amount, and payment history of the EPIC tradeline in her credit report, her complaint is insufficient to support a cause of action pursuant to §§ 1681i and 1681e(b). *See Burches v. Equifax Info. Servs., LLC*, No. 25-804, 2026 WL 1413072, *5 (E.D. La. May 20, 2026) (Morgan, J.) (finding that because the plaintiff had only asserted inaccuracies such as "date opened, balance, account status, payment history, charge-off information, and creditor name" without further detail, the plaintiff had "failed to state a cause of action under the FCRA"); *see also Cruel v. Experian*, No. 22-5236, 2023 WL 4140828, at *3 (E.D. Pa. June 22, 2023) ("Plaintiff does not provide any details regarding what items on their credit reports were inaccurate or negative . . . Plaintiff alleges additional facts in their (sic) response . . . that Defendants report inaccurate and/or inconsistent information regarding Plaintiff's name, the name of Plaintiff's employer, dates accounts were opened, and payment history. Even if the Court accepts the response in opposition as pleaded facts, Plaintiff still fails to sufficiently state a claim." (internal citations omitted)).

Additionally, to the extent the inaccuracies that plaintiff complains of are derivative of her disputes regarding the legitimacy of the state court default judgment and collection activities against her, or that the inaccuracies in her report stem from misconduct of the non-CRA defendants, such disputes are not for the CRAs to resolve. "The FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed." *See Reyes*, 140 F.4th at 287 (quoting *Wright v. Experian Info. Sols., Inc.*, 805 F.3d

17

1232, 1244 (10th Cir. 2015)). "Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025). Furthermore, "[a] dispute that . . . requires credibility determinations and quasi-discovery isn't" an objective and verifiable inaccuracy supporting a cause of action pursuant to the FCRA. *Id.*

Accordingly, plaintiff has failed to surmount the initial threshold necessary to establish her §§ 1681i and 1681e(b) claims with respect to the first, second, and third inaccuracies alleged against the CRAs in her complaint.

Plaintiff also asserts that the CRAs failed to conduct reasonable investigations to verify the alleged inaccuracies, and specifically alleges that Equifax and Experian violated § 1681i(a)(7) by failing to provide descriptions of the processes they used to investigate the disputed information.

Plaintiff readily admits that the CRAs contacted the information furnisher to verify the accuracy of the information she disputed.[51] As she acknowledges that the CRAs did take steps to verify the accuracy of the information she disputed, the remaining question is whether simply alleging that a CRA's investigation was unreasonable because it did not remove the disputed information from her credit report supports a § 1681i cause of action. It does not. *See Kennedy v. Victoria's Secret Stores, Inc.*, No. 03-2691, 2004 WL 414808, at *4 (E.D. La. Mar. 3, 2004) (holding that

---

[51] R. Doc. No. 32 ¶¶ 67–68, 75–76, 83.

18

simply alleging that a CRA did not reasonably investigate a dispute because the disputed information remained on her credit report was insufficient to support the plaintiff's § 1681i claim). Additionally, the Fifth Circuit has found that, absent notice to the CRA of a need to employ procedures beyond furnisher verification, it is not facially unreasonable for the CRA to rely on the furnisher to verify disputed information. *See Barron v. Equifax Info. Servs., L.L.C.*, 802 F. App'x 161, 162–63 (5th Cir. 2020). Here, plaintiff neither details how the CRAs investigation was unreasonable, nor does she allege that the CRAs were on notice that verification beyond outreach to the furnisher was necessary. As such, she has failed to adequately plead a cause of action for a failure to conduct a reasonable investigation pursuant to § 1681i.

Plaintiff's claims against Equifax and Experian for violations of § 1681i(a)(7) fail for similar reasons. Section 1681i(a)(7) requires a CRA to provide, "by not later than 15 days after receiving a request from the consumer,"

> a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available.

§§ 1681i(a)(6)(B)(iii), 1681i(a)(7). Plaintiff's complaint is self-defeating with respect to her § 1681i(a)(7) claims because, as discussed, she readily admits that Equifax and Experian informed her that they contacted the furnisher to verify the disputed information.[52] As she has not alleged that the CRAs responded untimely to her

---

[52] *Id.* ¶¶ 75–76, 83.

request for a description of their verification process, or failed to provide the furnisher information the act requires, she has failed to plausibly plead that Equifax and Experian violated § 1681i(a)(7).

Comparatively, plaintiff's §§ 1681i and 1681e(b) claims against Experian—predicated on specific factual inaccuracies—survive. Her allegations, that Experian inaccurately reported that her "account [was] charged off while simultaneously updating balances through May 31, 2024" and "that [EPIC] was unable to locate [her] from December 31, 2019 through May 31, 2024,"[53] include greater factual specificity and reference to easily verifiable factual inaccuracies than those she broadly alleges elsewhere in her complaint. Additionally, Trans Union's motion to dismiss, which Experian joined, did not address these claims and Experian has not otherwise filed its own motion to dismiss. As such, plaintiff's §§ 1681i and 1681e(b) claims against Experian, with respect to these specific inaccuracies, may proceed.

### C.   Count III – Abuse of Process

The third count of plaintiff's complaint, alleged against Johnson, EPIC, and VJD, claims a cause of action pursuant to Louisiana law for abuse of process with respect to the state court default judgment and associated wage garnishment actions against her.

Plaintiff asserts that Johnson, EPIC, and VJD "pursued default judgment and subsequent enforcement activity while knowingly omitting material facts . . . [and] presented filings to the court that created a false and misleading impression of the

---

[53] *Id.* ¶ 82.

validity and amount of the debt."[54] She also states that "misuse of judicial process was undertaken to obtain collection leverage and enforcement advantages to which they were not entitled."[55] Johnson, EPIC, and VJD disagree with plaintiff's characterization of the state court proceedings and argue that she has failed to sufficiently plead a cause of action for abuse of process.[56] These defendants also assert that, to their knowledge, there is "no cause of action for [abuse of process] in Louisiana."[57]

"Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law." *Sream, Inc. v. Superior Disc., LLC*, No. 17-8177, 2019 WL 2124887, at *6 (E.D. La. May 15, 2019) (Morgan, J.). In Louisiana, abuse of process "has two essential elements: (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." *Id.* (quoting *No Drama, LLC v. Caluda*, No. 15-211, 177 So.3d 747, 751 (La. App. 5 Cir. 2015)).

Although Johnson, EPIC, and VJD are mistaken regarding the existence of an abuse of process cause of action in Louisiana, plaintiff has nevertheless failed to state a claim for the same. Taking or threatening legal action to collect a debt is not considered an abuse of process or acting with an "ulterior purpose" in Louisiana. *See Harvey v. Caesars Ent. Operating Co., Inc.*, 790 F. App'x 582, 591–92 (5th Cir. 2019);

---

[54] R. Doc. No 32 ¶ 87.
[55] *Id.* ¶ 88.
[56] R. Doc. No. 42-1, at 3–4.
[57] *Id.* at 3.

*see also Graham v. Foret*, 818 F. Supp. 175, 178 (E.D. La. 1992) ("[A]s a matter of law . . . there can be no 'ulterior purpose' in the attempt to collect money owed." (quoting *Owl Constr. Co. v. Ronald Adams Contractor, Inc.*, 642 F. Supp. 475, 478 (E.D. La. 1986))). Similarly, allegations that a party "'wrongfully assert[ed]' claims" during the course of legal proceedings are not indicative of an "irregularity in the process itself or an act not proper in the regular prosecution of the proceeding" because, in essence, plaintiff's complaint is "not based on any perversion of any process but simply the filing of the suit." *Sream, Inc.*, 2019 WL 2124887, at *8 (citations omitted).

Plaintiff's abuse of process claim is predicated on the institution of a legal process to collect on a debt that she acknowledges exists,[58] and she has not alleged that the collection activities instituted against her involved a wrongful act or a use of the process not proper in the regular prosecution of the proceeding. Accordingly, plaintiff has failed to sufficiently allege the elements of an abuse of process claim against Johnson, EPIC, and VJD.

### D.    Amendment of Pleadings

In her response to VJD's motion to dismiss, plaintiff requests that she be granted leave to amend if the Court identifies any deficiencies in her complaint.[59] Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." "A formal motion is not always required, so

---

[58] Although plaintiff has indicated that she may disagree with how the balance of her debt was calculated, she admits that a retail installment contract did exist. R. Doc. No. 32 ¶ 2.
[59] R. Doc. No. 45, at 4.

long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). However, "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Although Rule 15 "evinces a bias in favor of granting leave to amend," it is not automatic. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *United States ex rel. Lin v. Mayfield*, 773 F. App'x 789, 790 (5th Cir. 2019). A decision to grant leave to amend is within the discretion of the trial court. *Mayfield*, 773 F. App'x at 790. And a trial court may deny a request, even when it is made within the deadline set by a court for seeking leave to amend. *See Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 883 (5th Cir. 2016) (differentiating the liberal Rule 15 standard for leave to amend, when a request is made before the court's deadline for requesting leave to amend, from the more stringent Rule 16 standard, requiring a showing of good cause if a request is made after the court's deadline).

Pursuant to Rule 15, a "district court must possess a 'substantial reason' to deny a request for leave to amend." *Id.* (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)). These reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

23

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A]n amended complaint is futile 'if the complaint as amended would be subject to dismissal.'" *Rohi v. Brewer* (*In re ABC Dentistry, P.A.*), 978 F.3d 323, 325 (5th Cir. 2020) (quoting *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014)). Futility is evaluated "under the same standards as a dismissal under Rule 12(b)(6)." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 437 (5th Cir. 2021) (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

Plaintiff has already received one opportunity to amend her complaint with particular facts to support her claims and she has failed to do so. Her second petition to amend her complaint provides this Court with only a bare request to amend if the Court finds that any aspects of her claims are insufficiently pled. She does not apprise the Court of the way in which she would rectify any deficiencies identified. Courts have frequently denied leave to amend on similarly bare requests. *See, e.g.*, *Kovalchuk v. Wilmington Sav. Fund Socy.*, No. 21-40281, 2021 WL 5119705, at \*2 (5th Cir. Nov. 3, 2021) (affirming the district court's denial of a request for leave to amend for being insufficiently particular when it asked to amend "any other cause of action which the Court determines should be dismissed"); *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003) (affirming the district court decision to deny leave to amend for being insufficiently particular when the plaintiff asked to "file amended pleadings adding additional plaintiffs and facts as allowed by law"). The Court will therefore deny plaintiff's request for leave to amend.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Trans Union's motion[60] to dismiss is **DENIED** with respect to plaintiff's claims alleging that Experian inaccurately reported that her "account [was] charged off while simultaneously updating balances through May 31, 2024" and "that [EPIC] was unable to locate [her] from December 31, 2019 through May 31, 2024."[61] Trans Union's motion to dismiss is **GRANTED** with respect to all claims alleged against defendants Trans Union and Equifax, and such claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Johnson, EPIC, and VJD's joint motion[62] to dismiss is **GRANTED** with respect to count III of plaintiff's first amended complaint, and **DENIED** with respect to counts I and II. Count III of plaintiff's complaint is **DISMISSED WITH PREJUDICE**.[63]

New Orleans, Louisiana, June 26, 2026.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[60] R. Doc. No. 36.

[61] R. Doc. No 32 ¶ 82.

[62] R. Doc. No. 42.

[63] As count III was the only claim alleged against Brittany Johnson, all claims against her have been dismissed.